IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT, OHIO
EASTERN DIVISION

|  |  |
|---|---|
| TRACI HARNTETT-MERCADO<br>3565 Warren Road<br>Cleveland, OH  44111 | CASE NO.: |
|  | JUDGE |
| Plaintiff, |  |
| vs. |  |
| CITY OF CLEVELAND<br>601 Lakeside Avenue<br>Cleveland, Ohio 44114 | **COMPLAINT** |
| And | (Jury Demand Endorsed Hereon) |
| KHALIL EWAIS (in his official and<br> personal capacities)<br>3490 W. 46th Street<br>Cleveland, Ohio 44102 |  |
| And |  |
| RICHARD SWITALSKI (in his official<br> and personal capacities)<br>6133 Hilary Drive South<br>North Royalton, Ohio 44133 |  |
| And |  |
| LOUIS GRIGGS (in his official and personal<br> capacities)<br>4528 W146 Street<br>Cleveland, Ohio  44135 |  |
| Defendants. |  |

Now comes Plaintiff, Traci Hartnett-Mercado (hereinafter "Plaintiff"), by and through

her undersigned counsel, and for her Complaint against Defendants, City of Cleveland ("City"),

Khalil Ewais ("Ewais"), Richard Switalski, ("Switalski"), and Louis Griggs ("Griggs"), (collectively referred to as "Defendants") states as follows:

## PARTIES

1.      Plaintiff is a resident of Cleveland, Cuyahoga County, Ohio.

2.      Plaintiff was an employee as that term is defined in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e. et seq. (hereinafter "Title VII") and the Ohio Civil Rights Act, Ohio Revised Code Chapter 4112 (hereinafter "OCRA").

3.      The City is an employer as that term is defined in Title VII and the OCRA and is engaged in doing business in Cuyahoga County, Ohio.

4.      The City was and is Plaintiff's employer for purposes of the Title VII and the OCRA.

5.      Ewais is a resident of Cleveland, Cuyahoga County, Ohio.

6.      Switalski is a resident of North Royalton, Cuyahoga County, Ohio.

7.      Griggs is a resident of Cleveland, Cuyahoga County, Ohio.

8.      Ewais, Switalski, and Griggs both individually and in concert with one another, committed, encouraged and/or failed to address various acts of retaliation against Plaintiff.

9.      The City employs or formerly employed Ewais, Switalski and Griggs and is vicariously liable for their acts and omissions pursuant to its customs, policies or practices.

## JURISDICTION AND VENUE

10.     Plaintiff realleges and reavers each and every allegation contained in Paragraphs One (1) through Nine (9) of this Complaint as if fully rewritten herein.

11.     Plaintiff filed an initial Charge of Discrimination with the Equal Employment Opportunity Commission on or about March 27, 2017.  The allegations in that charge, which is attached hereto as Exhibit A, are incorporated herein by reference.

12.     Plaintiff filed a second Charge of Discrimination with the Equal Employment Opportunity Commission on or about November 27, 2017.  The allegations in that charge, which is attached hereto as Exhibit B, are incorporated herein by reference.

13.     On or about February 14, 2019, the Equal Employment Opportunity Commission issued Plaintiff two (2) Right to Sue Letters in connection with the aforementioned charges. Copies of the Right to Sue Letters are attached hereto as Exhibits C and D and incorporated by reference.

14.     This Court has original subject matter jurisdiction over Plaintiff's Title VII claims pursuant to the provisions of Title VII.

15.     This Court has original subject matter jurisdiction over Plaintiff's claims under 42 U.S.C. §1983 and §1985(3).

16.     This Court has supplemental subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**STATEMENT OF FACTS**

18.     Plaintiff realleges and reavers each and every allegation contained in Paragraphs One (1) through Seventeen (17) of this Complaint as if fully rewritten herein.

19.     Plaintiff was initially hired by the City on or about July 2, 1993 as an Engineering and Construction Inspector for the Mayor's Office of Capital Projects (MOCAP).

20.     In approximately February of 2011, Plaintiff began working as Acting Chief Inspector, under the direction of Ewais, Section Chief of Construction for MOCAP.

21.     In May of 2014, Plaintiff was officially promoted to the position of Chief Inspector, still under the direction of Ewais.

22.     At all times relevant herein, Griggs worked as a Construction Technician under the direction of Ewais.

23.     At all times relevant herein, Ewais reported to Switalski, the Administrative Bureau Manager of MOCAP.

24.     In approximately 2012, Griggs began making inappropriate comments of a sexual nature to Plaintiff.

25.     Plaintiff told Griggs to stop.

26.     Griggs would tell Plaintiff that he loved her and that she would make a good wife for him.

27.     Plaintiff told Griggs to stop.

28.     Griggs also told Plaintiff that he had been convicted of stalking a married woman with whom he had a relationship and that he had to go to jail for the weekend.

29.     Griggs would enter Plaintiff's work space and take things without her permission.

30.     Plaintiff told Griggs to stop.

31.     In February of 2013, Plaintiff complained to Ewais and Switalski about Griggs's behavior; however, no action was taken against Griggs.

32.     Griggs created a hostile work environment.

33.     In April of 2014, Griggs was disciplined for using offensive conduct and language toward fellow employees.

4

34. Also in April of 2014, Griggs was disciplined for improper use of City equipment.

35. Griggs subsequently called Plaintiff, yelled at her and blamed her for the discipline he received.

36. Griggs' conduct caused Plaintiff to become fearful.

37. In July of 2015, Griggs and Plaintiff were scheduled to attend a two-day safety course.

38. On the first day of the course, Griggs yelled at Plaintiff for not taking the same route he took to the course.

39. On the second day of the course, Griggs again yelled at Plaintiff and informed her that he had gone to her house that morning, parked in her drive and timed the distance it took him to get to the course.

40. Plaintiff again complained about Griggs's conduct to Switalski and Ewais.

41. Switalski and Ewais dismissed her complaints and the hostile work environment continued.

42. Also in July of 2015, Ewais and Switalski received a series of complaints from Utilicon Corporation, a third-party contractor, regarding Griggs.

43. Utilicon accused Griggs of threatening, harassing and shouting obscenities at its employees.

44. No disciplinary action was taken against Griggs.

45. In approximately April or May of 2016, Plaintiff's neighbor observed Griggs sitting in Plaintiff's driveway for fifteen (15) minutes.

46. Plaintiff was fearful for her safety and again complained to Ewais and Switalski about Griggs.

47.     No action was taken and the hostile work environment continued.

48.     Plaintiff's neighbor also advised her that he had heard a motorcycle, presumably operated by Griggs who owned a motorcycle, pass by her house dozens of times revving the engine.

49.     In June of 2016, Griggs was accused by another City employee of engaging in threatening and offensive conduct.

50.     As a result of this complaint, Griggs was finally disciplined and put on a Performance Improvement Plan.

51.     In June of 2016, Plaintiff again spoke to Switalski and Ewais about Griggs's pattern of intimidation.

52.     In July of 2016, Griggs brought a sword concealed under his trench coat to City Hall and bragged to co-workers about how he made it past security.

53.     On July 27, 2016, Plaintiff again spoke to Ewais and Switalski about her fear of Griggs and specifically discussed the incident with the sword.

54.     On July 29, 2016, Plaintiff was admitted to Fairview Hospital for three (3) days with chest pains.

55.     Plaintiff underwent a stress test, EKG and heart catheterization but was ultimately advised her problems were related to stress.

56.     Plaintiff's doctor took her off of work August 9, 2016 through August 12, 2016 and advised her that stress can lead to heart problems.

57.     On September 5, 2016, Plaintiff was approved for intermittent leave under the Family and Medical Leave Act ("FMLA").

58.     Around this same time, Plaintiff had spoken to Switalski raising concerns about Ewais' pattern of using his public position to benefit his company, Pioneer Engineering and to benefit his friends and business partners.

59.     After Switalski ignored Plaintiff's complaints, she took her concerns to Director, Matthew Spronz, in the Fall of 2016.

60.     It is unknown whether Spronz shared Plaintiff's concerns about Ewais with anyone else at that time.

61.     In October of 2016, Plaintiff was inspecting a job and learned that Griggs overstepped his authority by allowing a contractor to erect fencing.

62.     Plaintiff alerted Ewais to the issue and in turn, Griggs verbally harassed Plaintiff.

63.     On October 6 2016, Griggs retaliated against Plaintiff by sending an email to Ewais and Switalski falsely accusing Plaintiff of yelling at him and using profanity.

64.     As a result of Griggs's complaint, Plaintiff was initially reprimanded; however the charge was later removed from Plaintiff's file after it was determined that Griggs's complaint was false.

65.     On October 24, 2016, Plaintiff sent an email to James Miller, Union Steward, advising him that she does not feel safe around Griggs.

66.     On October 31, 2016, Griggs was observed by Plaintiff's co-worker in Plaintiff's work area without purpose or permission.

67.     That same day, Plaintiff complained to Ewais who allegedly told Griggs not to speak to Plaintiff.

68.     That same day, Plaintiff's husband, Peter Mercado who is employed by the City of Cleveland, Department of Public Utilities, sent an email to Kimberly Harden, HR

Administrator, alerting her that Plaintiff did not feel safe in her home or at work as a result of Griggs's ongoing harassment.

69.     That same day, Plaintiff began seeing a therapist at Ease at Work due to Griggs's harassment.

70.     On numerous occasions, Griggs would smirk, laugh and leer at Plaintiff in an effort to harass her.

71.     On numerous occasions, Plaintiff would complain to Ewais about Griggs's harassment of her and Ewais would dismiss her complaints and respond, "I do not have time for this shit."

72.     On November 8, 2016, Plaintiff filed a police report against Griggs for his ongoing harassment of her.

73.     Also on November, 8, 2016, Plaintiff complained to HR about not feeling safe around Griggs.

74.     On November 14, 2016, Plaintiff advised Spronz and Marcia Johnson, HR Manager, that someone had keyed her car while it was parked in the garage.

75.     Plaintiff again reiterated her fear of Griggs to Spronz and Johnson and expressed concern that Griggs may have been responsible for damaging her car.

76.     On November 21, 2016, Plaintiff requested an alternate work schedule of 7:00 a.m. to 3:30 p.m. due to her fear of Griggs.

77.     Subsequently, Griggs began arriving at work earlier to further harass Plaintiff.

78.     On December 12, 2016, Plaintiff filed a Petition requesting a Civil Protection Order against Griggs.

79.     After an ex parte hearing, Plaintiff's Petition was granted and a Civil Protection Order ("CPO") was issued until February 12, 2017 prohibiting Griggs from contact with Plaintiff.

80.     On January 4, 2017, Switalski and Ewais called Plaintiff regarding the CPO and advised Plaintiff that she could either be moved or stay out in the field.

81.     Plaintiff did not feel that after twenty-four (24) years of working in the same area she should have to move when she was the victim and Griggs was the aggressor.

82.     On January 27, 2017, Spronz sent a memo to Plaintiff advising her that Griggs was instructed not to use the front or rear doors near Plaintiff.  Spronz further advised Plaintiff that Griggs's work station was being located to a different room.

83.     That same day, Ewais gave Plaintiff her performance evaluation and gave her lower scores than she had received in the past.

84.     Ewais's actions were in retaliation for Plaintiff filing a Civil Stalking Petition against Griggs.

85.     On February 2, 2017, after a hearing on the Civil Stalking Petition filed by Plaintiff, the Court issued a decision denying Plaintiff's Petition and finding that there was insufficient evidence to show that Griggs had knowingly engaged in a pattern of conduct that caused Plaintiff to believe he would cause her physical harm or emotional distress.

86.     On February 24, 2017, Human Resources finalized its report on Plaintiff's complaints about Griggs.

87.     In its report, Human Resources incredibly found that there was insufficient evidence to prove that Griggs' actions rose to the level of an EEO violation.

88.    The report did, however, conclude that Griggs may have violated City policies and procedures.

89.    On February 27, 2017, Plaintiff suffered a panic attack while at mandatory supervisor training that Ewais and Switalski were also attending.

90.    On February 28, 2017, Plaintiff had a meeting with Spronz and Johnson wherein Plaintiff again discussed Ewais' illegal practices of using his public position to benefit his company and to benefit his friends and business partners.

91.    Plaintiff showed Spronz and Johnson photographic evidence of work Ewais ordered to be performed at taxpayers' expense.

92.    Spronz advised Plaintiff that he was turning the matter over to Homeland Security and Internal Affairs.

93.    Subsequently, Plaintiff met with investigators to review her evidence regarding Ewais' illegal practices.

94.    On March 27, 2017, Plaintiff filed a Charge with the EEOC alleging discrimination based on sex and religion and alleging retaliation.

95.    Specifically, Plaintiff alleged and continues to allege that Griggs sexually harassed Plaintiff and that Ewais and Switalski were aware of Plaintiff's complaints yet never took action against Griggs.

96.    Plaintiff further alleged and continues to allege that Ewais treated Plaintiff differently than her male co-workers.

97.    On March 28, 2017, Plaintiff had to leave work due to another panic attack.

98.    On Sunday, April 2, 2017, Plaintiff observed Griggs at a home twelve (12) houses from her home.

99.    Switalski later admitted that he authorized Griggs to conduct City business on a Sunday at a home on Plaintiff's street.

100.    On April 3, 2017, after a pre-disciplinary hearing, Griggs was issued a ten (10) day suspension for the EEO incident involving Plaintiff, as well as another incident involving another employee.

101.    Despite the suspension, Griggs was observed in the building in violation of City policy; however, he did not receive further discipline.

102.    On April 19, 2017, Plaintiff sent an email to Spronz advising him that Ewais was retaliating against her.

103.    On May 9, 2017, Plaintiff observed Griggs at work near her work space over thirty (30) minutes before his scheduled start time.

104.    This caused Plaintiff to suffer another panic attack and she was forced to leave work.

105.    This incident led to Griggs receiving a fifteen (15) day suspension and a Last Chance Agreement.

106.    During this time, Plaintiff continued to cooperate with the federal investigation into Ewais' illegal practices despite her fear that she would be further retaliated against.

107.    Upon information and belief, Griggs was performing work on the side for Pioneer Engineering which explains why Ewais never properly dealt with Plaintiff's complaints involving Griggs.

108.    On October 23, 2017, Plaintiff received a letter from Spronz advising her that Griggs was being relocated back to her work area.

109. Griggs was not immediately relocated and on November 21, 2017 Spronz issued a second memo again threatening to relocate Griggs back to Plaintiff's work area.

110. Also, on November 21, 2017, Plaintiff received her first discipline after twenty-four (24) years of service and she was given a one (1) day suspension without pay.

111. Plaintiff received this discipline in retaliation for the complaints she filed against Griggs.

112. On November 27, 2017, Plaintiff filed a second EEOC charge alleging gender discrimination and retaliation.

113. On December 6, 2017, the Federal Bureau of Investigation, Internal Revenue Service and the Department of Housing Urban Development conducted a raid on City Hall, seizing documents from Ewais' company, Pioneer Engineering.

114. Upon information and belief, Ewais knew that Plaintiff had participated in the investigation that led to the raid.

115. On numerous occasions, Switalski accused Plaintiff of reporting Ewais' illegal activities to federal authorities.

116. On April 16, 2018, Plaintiff was disciplined for a second time for sending an email fifteen (15) minutes prior to the beginning of her shift and she received a three (3) day suspension without pay.

117. On June 4, 2018, Plaintiff was disciplined for a third time for alleged neglect of duty.

118. As a result of the aforementioned discipline, Plaintiff received a five (5) day suspension without pay.

119.    Upon information and belief, Ewais and Switalski conspired to discipline Plaintiff in retaliation for the charges she filed with the EEOC, as well as her participation in the federal investigation of Ewais.

120.    In the summer of 2018, Ewais had become increasingly critical of Plaintiff's work and stripped her of various responsibilities including timekeeping for her inspectors, interviewing perspective hires, excluding her from progress and Mayor's meetings, requiring her to work in the field and assigning her to work on projects in dangerous neighborhoods.

121.    This unrelenting stress and anxiety forced Plaintiff to take a two (2) month leave of absence from work from July through September 2018.

122.    When Plaintiff returned to work, she was advised that she would now be a remote employee meaning that she did not begin her workday at City Hall as she had been doing for the past twenty-five (25) years.

123.    Plaintiff's reassignment as a remote employee made it more difficult for her to complete jobs such as reviewing and responding to emails and voicemails and approving reports.

124.    On November 9, 2018, Plaintiff was informed that she would no longer have a cubicle at City Hall.

125.    Defendants' actions in demoting Plaintiff to a remote employee and taking away her cubicle were retaliation for the charges filed with the EEOC as well as her participation in the federal investigation of Ewais.

126.    On November 29, 2018, Ewais began questioning Plaintiff about why she did not attend a progress meeting.

127. Although Plaintiff was previously excluded from progress meetings by Ewais, Ewais and Switalski accused Plaintiff of neglect of duty and scheduled a pre-hearing conference for December 6, 2018.

128. Upon information and belief, Ewais and Switalski's conduct was in retaliation for the previous EEOC charges Plaintiff had filed, as well as her participation in the investigation of Ewais.

129. On December 19, 2018, Ewais was indicted for alleged violations of extortion under color of official right, 18 U.S.C. §1951(a), bribery in federal funded programs, 18 U.S.C. §666(a)(1)(B), theft from a program receiving federal funds, 18 U.S.C. §666(a)(1)(A), wire fraud, 18 U.S.C. §1343, false statement of representation made to a department or an agency of the United States, 18 U.S.C. §1001(a)(2) and making and subscribing false income tax returns, 26 U.S.C. §7206(1).

130. Despite the fact that Ewais was indicted and removed from his position, Plaintiff was still disciplined as a result of her alleged failure to attend a progress meeting on November 29, 2018.

131. As a result of Defendants' conduct, Plaintiff has been diagnosed with Post Traumatic Stress Disorder, anxiety and panic attacks.

132. As a result of Defendants' conduct, Plaintiff has had to use over one thousand three hundred (1,300) hours of FMLA leave.

133. Plaintiff had previously filed internal and external complaints regarding harassment and discrimination that was being directed towards her.

134. Plaintiff believes that she is being disciplined in retaliation for filing complaints regarding harassment and discrimination.

135.    Plaintiff participated in a federal investigation which led to Ewais' indictment.

136.    Plaintiff believes that she has been disciplined in retaliation for her participation in the federal investigation which led to Ewais' indictment.

137.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, attorney's fees and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT ONE – TITLE VII (SEXUAL HARASSMENT)

138.    Plaintiff realleges and reavers each and every allegation contained in paragraphs one (1) through one hundred and thirty-seven (137) of this Complaint as if fully rewritten herein.

139.    Plaintiff was a member of a protected class, i.e., female.

140.    Plaintiff was subjected to unwanted sexual harassment from Griggs.

141.    Griggs's harassment of Plaintiff was based on her gender.

142.    Griggs's harassment of Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

143.    Defendants knew or should have known about Griggs's conduct, and failed to take appropriate, prompt and effective action to prevent sexual harassment.

144.    Plaintiff was subjected to unlawful sexual harassment in violation of Title VII.

145.    As a direct and proximate result of the sexual harassment to which she was subjected Plaintiff has suffered lost wages, lost benefits, emotional distress, attorney's fees and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT TWO - OCRA (SEXUAL HARASSMENT)

146.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs one (1) through one hundred and forty-five (145) of this Complaint as if fully rewritten herein.

147.    Plaintiff was a member of a protected class, i.e., female.

148.    Plaintiff was subjected to unwanted sexual harassment from Griggs.

149.    Griggs's harassment of Plaintiff was based on her gender.

150.    Griggs's harassment of Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

151.    Defendants knew or should have known about Griggs's conduct, and failed to take appropriate, prompt and effective action to prevent sexual harassment.

152.    Plaintiff was subjected to unlawful sexual harassment in violation of the OCRA.

153.    As a direct and proximate result of the foregoing, and the sexual harassment to which she was subjected Plaintiff has suffered lost wages, lost benefits, emotional distress, attorney's fees, and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT THREE – TITLE VII (RETALIATION)

154.    Plaintiff realleges and reavers each and every allegation contained in paragraphs one (1) through one hundred and fifty-three (153) of this Complaint as if fully rewritten herein.

155.    Plaintiff's discipline by Defendants was in retaliation for her engaging in protected conduct relative to her complaints of sexual harassment by Griggs.

156.    Defendants' discipline of Plaintiff violated Title VII.

157.    As a direct and proximate result of Plaintiff's discipline and the sexual harassment to which she was subjected, Plaintiff has suffered lost wages, lost benefits, emotional distress, attorney's fees, and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT FOUR – OCRA (RETALIATION)

158. Plaintiff realleges and reavers each and every allegation contained in paragraphs one (1) through one hundred and fifty-seven (157) of this Complaint as if fully rewritten herein.

159. Plaintiff's discipline by Defendants was in retaliation for her engaging in protected conduct relative to her complaints of sexual harassment by Griggs.

160. Defendants' discipline of Plaintiff violated the OCRA.

161. As a direct and proximate result of Plaintiff's discipline and the sexual harassment to which she was subjected, Plaintiff has suffered wages, lost benefits, emotional distress, attorney's fees, and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT FIVE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

162. Plaintiff realleges and reavers each and every allegation contained in paragraphs one (1) through one hundred and sixty-one (161) of this Complaint as if fully rewritten herein.

163. Defendants intended to cause Plaintiff emotional distress or knew or should have known that their actions would result in serious emotional distress to Plaintiff.

164. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized society.

165. Defendants' conduct was the proximate cause of Plaintiff's psychic injury.

166. Plaintiff's mental anguish was serious and of a nature that no reasonable person could be expected to endure.

167.    As a direct and proximate result of Defendants' harassment and retaliation, Plaintiff has suffered lost wages, lost benefits, emotional distress, attorney's fees, and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT SIX – NEGLIGENT HIRING AND RETENTON

168.    Plaintiff re-alleges and re-avers each and every allegation contained in paragraphs one (1) through one hundred and sixty-seven (167) of this Complaint as if fully rewritten herein.

169.    Griggs has been an employee of the City since at least 2012.

170.    In 2008, Griggs was charged with criminal trespass and later pled guilty to and was convicted of disorderly conduct in Rocky River Municipal Court, Case No. 08 CRB 1176.

171.    Since 2012, Griggs has been harassing, threatening and intimidating Plaintiff.

172.    Since 2012, Plaintiff has made countless complaints about Griggs to Ewais, Switalski, Spronz, Johnson and other City officials.

173.    Defendants have received numerous other complaints about Griggs's harassing, threatening and intimating behavior.

174.    Despite Defendants' knowledge, they continued to allow Griggs to work near Plaintiff.

175.    Defendants' acts or omissions caused Plaintiff injuries.

176.    As a direct and proximate result of Defendants' negligence in hiring and retaining Griggs, Plaintiff has suffered lost wages, lost benefits, emotional distress, attorney's fees, and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT SEVEN – OHIO WHISTLEBLOWER VIOLATION – ORC 4113.52

177.    Plaintiff reavers and realleges each and every allegation contained in paragraphs one (1) through one hundred seventy-six (176) of this Complaint as if fully rewritten herein.

178.   Plaintiff engaged in activity protected by the Whistleblower Protection Act, specifically Plaintiff participated in the federal investigation that led to Ewais' indictment.

179.   Defendants knew or suspected that Plaintiff engaged in the aforementioned protected activity.

180.   Defendants took adverse action against Plaintiff including but not limited to disciplining Plaintiff on four (4) different occasions, being overly critical of her work, stripping her of various responsibilities including timekeeping for her inspectors, interviewing perspective hires, excluding her from progress meetings and Mayor's meetings, requiring her to work in the field, assigning her work on projects in dangerous neighborhoods, reassigning her as a remote employee, and taking away her cubicle.

181.   Defendants engaged in the aforementioned retaliation as a direct and proximate result of Plaintiff having engaged in protected activity.

182.   As a direct and proximate result of Defendants' harassment and retaliation, Plaintiff has suffered lost wages, lost benefits, emotional distress, attorney's fees, and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT EIGHT – FIRST AND FOURTEENTH AMENDMENT RETALIATION UNDER 42 U.S.C. 1983

183.   Plaintiff reavers and realleges each and every allegation contained in paragraphs one (1) through one hundred eighty-two (182) of this Complaint as if fully rewritten herein.

184.   Plaintiff engaged in various forms of protected speech and conduct as set forth above.

185.   Plaintiff's speech and conduct concerned matters of public concern.

186.   In participating in the federal investigation of Ewais, Plaintiff was acting as a concerned private citizen.

187.    Both individually and in concert with one another, Defendants retaliated against Plaintiff for having engaged in the aforementioned protected activity and conduct in an effort to deter her and others from engaging in such protected speech and conduct in the future.

188.    This retaliation included being overly critical of her work, stripping her of various responsibilities including timekeeping for her inspectors, interviewing perspective hires, excluding her from progress meetings and Mayor's meetings, requiring her to work in the field, assigning her work on projects in dangerous neighborhoods, reassigning her as a remote employee, and taking away her cubicle.

189.    The retaliation was motivated by Defendants' knowledge or belief that Plaintiff had engaged in the aforesaid protected speech and conduct.

190.    The retaliation Plaintiff suffered occurred with such regularity as to deter an ordinary person from engaging in similar protected speech or conduct.

191.    It is clearly established that a public official violates an employee's constitutional right to free speech when he or she retaliates against the employee for engaging in the protected speech.  Any reasonable public official would have known this during the time of the events detailed in this Complaint.

192.    Defendants are or were sufficiently empowered city officials such as their acts constitute the customs, policies and practices of the City.

193.    Plaintiff complained about the retaliation to various City officials, none of whom took any action to prevent the retaliation but instead encouraged, exacerbated, ratified and/or tolerated it.

194.    Accordingly, the City officials approved, endorsed and adopted the custom, policy and practice of retaliating against Plaintiff.

195.   The retaliation against Plaintiff became the City's custom practice and policy.

196.   As a direct and proximate result of the aforementioned retaliation, Plaintiff has suffered and will continue to suffer lost wages, lost benefits, emotional distress, attorney's fees, and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).   .

197.   Defendants intentionally, maliciously, wantonly, and recklessly violated the First and Fourteenth Amendments of the United States Constitution and thus are liable for punitive or exemplary damages.

## COUNT NINE – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS UNDER 42 U.S.C. §1985(3)

198.   Plaintiff reavers and realleges each and every allegation contained in paragraphs one (1) through one hundred ninety-seven (197) of this Complaint as if fully rewritten herein.

199.   Defendants entered into and carried out a conspiracy with the specific intent to deprive Plaintiff of rights guaranteed to all citizens under the First and Fourteenth Amendments of the United States Constitution.

200.   Specifically, Defendants conspired and worked together to initiate, develop and execute a plan to retaliate against Plaintiff on account of her having exercised her rights under the First and Fourteenth Amendments to cooperate in the federal investigation of Ewais.

201.   Defendants intentionally, willfully, wantonly, recklessly and maliciously violated the First and Fourteenth Amendments of the United States Constitution.

202.   Under U.S.C. §1985(3) Plaintiff has an action against all conspiring Defendants for the recovery of damages occasioned by such injury and deprivation of rights.

203.   As a direct and proximate result of Defendants unlawful conduct Plaintiff has suffered and will continue to suffer lost wages, lost benefits, emotional distress, attorney's fees, and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

WHEREFORE, Plaintiff requests the following relief:

A. Compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

B. Punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

C. Attorneys' fees and costs as provided for under the law;

D. Pre- and post-judgment interest; and

E. Such other and further relief as this Honorable Court may deem Plaintiff to be entitled.

Respectfully submitted,


 /s/ Kristen M. Kraus
Kristen M. Kraus (#0073899)
kmkraus@dworkenlaw.com
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, OH   44077
(440) 352-3391


 /s/ Dennis Niermann
Dennis Niermann (#0007988)
dennis@niermannlaw.com
Dennis Neirmann, Co., LPA
PO Box 202295
Shaker Heights, OH  44120
(216) 375-2696

*Attorneys for Plaintiff*

## **INSTRUCTIONS FOR SERVICE**

Please serve Defendants at the addresses set forth in the caption of the Complaint by certified mail, return receipt requested, in accordance with the Ohio Rules of Civil Procedure.

 /s/ Kristen M. Kraus
Kristen M. Kraus (#0073899)

## **JURY DEMAND**

Now comes Plaintiff, by and through her counsel, and demands that this case be tried before a jury of the maximum number allowed by law.

 /s/ Kristen M. Kraus
Kristen M. Kraus (#0073899)